IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| RICARDO LINARES-ANDRADE, <br> Fed. Reg. No. 65926-280, <br> Movant, | § § § § | |
| v. | § § | EP-11-CV-544-PRM <br> EP-10-CR-2533-PRM |
| UNITED STATES OF AMERICA, <br> Respondent. | § § § | |

## **MEMORANDUM OPINION AND ORDER OF DISMISSAL**

On this day, the Court considered Movant Ricardo Linares-Andrade's (Linares) "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 27)[1] [hereinafter Motion], filed on December 19, 2011, and the United States of America's (the Government) "Response to Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 34) [hereinafter Response], filed on March 8, 2012 in the above-captioned cause. In his Motion, Linares challenges his conviction and forty-six month sentence imposed by the Court for illegal re-entry, claiming that his retained counsel provided constitutionally ineffective assistance. After reviewing the record and for the reasons discussed below, the Court concludes that Linares has failed to establish his entitlement to § 2255 relief. It will accordingly deny his Motion and dismiss his civil cause with prejudice. Additionally, the Court will deny Linares a certificate of appealability.

---

[1] "ECF," in this context, refers to the criminal docket in cause number EP-10-CR-2533-PRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 6, 2010, Linares attempted to enter the United States at the Paso Del Norte Port of Entry in El Paso, Texas. Plea Agreement, Oct. 27, 2010, ECF No. 18. He "presented a valid Resident Alien Card, Form I-551, bearing the name and photograph of another and claimed to be that person to Customs and Border Protection Officer Adrian McCann." *Id.* "It was determined through official records of the Department of Homeland Security and an interview with [Linares] that he was an alien to the United States and a citizen and native of Mexico." *Id.* Immigration records further reflected that Linares had been previously removed from the United States on November 8, 2008. *Id.*

Subsequently, the Government filed an indictment, charging Linares with illegal re-entry in violation of 8 U.S.C. § 1326 and false personation in immigration matters in violation of 18 U.S.C. § 1546(a). Indictment, Sept. 22, 2010, ECF No. 9. Also on September 22, 2010, the Government filed its "Notice of Intent to Seek Increased Statutory Penalty," notifying Linares that it would "seek the increased penalties provided by Title 8, United States Code, Section 1328(b)(1)." ECF No. 10.

On October 27, 2010, Linares filed his "Plea Agreement" with the Court, wherein he pled guilty to count one, illegal re-entry. ECF No. 18. At the October 28, 2010 hearing, the Court accepted the Plea Agreement and Linares's guilty plea. ECF Nos. 19, 21. Then, on January 6, 2011, the Court sentenced Linares to forty-six months' imprisonment, three years' supervised release, and imposed a $100 special assessment. Minute Entry, ECF No. 24. Linares did not take an appeal from this judgment but instead filed the instant Motion on December 19, 2011.

## II. LEGAL STANDARD

### A. 28 U.S.C. § 2255

After a defendant has been convicted and exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). To receive relief pursuant to § 2255, the movant must demonstrate (1) that the sentence imposed violated the Constitution or laws of the United States, (2) that the sentencing court was without jurisdiction to impose the sentence, (3) that the sentence was in excess of the maximum authorized by law, or (4) that the sentence is otherwise subject to collateral attack. *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995).

### B. Ineffective Assistance of Counsel

The United States Constitution's Sixth Amendment guarantees accused persons the right to the assistance of counsel for their defense in all criminal prosecutions. U.S. CONST. amend. VI. Moreover, "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). "[I]neffective assistance claims are ordinarily brought for the first time on collateral review because of the difficulty of compiling an adequate record by the time of direct appeal." *Gaudet*, 81 F.3d at 589 n.5. To merit relief on an ineffective assistance of counsel claim, a movant must demonstrate both (1) that his "counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense." *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 687

3

(explaining that, unless a defendant demonstrates both elements, the sentence cannot have resulted from a breakdown in the adversary process); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim." (citing *Strickland*, 466 U.S. at 687)).

The test's performance prong centers on whether counsel's assistance was reasonable, considering all the circumstances at the time of counsel's conduct. *Strickland*, 466 U.S. at 688. In order to obtain relief, a movant must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

However, counsel has a wide range of reasonable professional discretion. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A deficiency in counsel's performance, even if professionally unreasonable, does not equal ineffective assistance of counsel; the movant must also demonstrate actual prejudice. *Id.* at 691-92. The test's prejudice prong requires the movant to demonstrate with "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

C. *Pro Se*

A court reviews *pro se* pleadings under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (explaining the lower standard for *pro se* pleadings). Additionally, when the complaint is filed

4

*pro se*, a court must observe its duty to construe the allegations liberally and more permissively. *S.E.C. v AMX, Intern'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993). Thus, "[u]nless the frivolousness of a claim is facially apparent, it is incumbent upon the court to develop the case and to sift the claims and known facts thoroughly until completely satisfied either of its merit or lack of same." *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) (internal quotations omitted).

At the same time, however, parties proceeding *pro se* are still required to provide sufficient facts in support of their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient." *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989))

### III. ANALYSIS

In his Motion, Linares argues that he received ineffective assistance of counsel when his attorney: (1) "failed to investigate [his] criminal history;" (2) "failed to object to the charges [and] the enhancements . . . and [failed to] later challenge the conviction by applying for a direct appeal of the judg[ment];" and (3) "failed to object to the base offense level as well as the criminal history category."[2] Mot. 4, 7, 8. Linares also charges that he was wrongfully charged for illegal re-entry, when he should have been charged with false personation, a charge that the prosecution declined to pursue as part of the terms of the plea agreement.

#### A. Failure to Investigate

Linares claims that his attorney "failed to investigate [his] criminal history and the application of 4A1.1. The attorney of record failed to determin[e] if [Linares] was properly

---

[2] Linares duplicates many of his allegations in different numbered-grounds. Therefore, the Court has distilled Linares's contentions and reorganized them here for ease of adjudication.

charged and if the 16 point level enhancement under 1326 2L1.2(b)(1)(a)(i) was correct." Mot. 4.

Whenever a petitioner alleges that his attorney failed to investigate the case, the "petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *St. Aubin v. Quarterman*, 470 F.3d 1096, 1101 (5th Cir. 2006) (citing *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005)); *see also United States v. Green*, 882 F.2d 999, 1002-03 (5th Cir. 1989) (finding that a defendant's claim of failure to investigate was not specific even though defendant claimed that his counsel was ineffective for failing to interview witnesses, pursue leads, and file a motion to suppress)

As to the second prong, Linares does spend substantial time in his Motion explaining how an adequate investigation would have changed the outcome of the trial. He states, several times, that his sentencing range would have been dramatically lower, had the sixteen-level enhancement been eliminated. *See, e.g.*, Mot. 46 (explaining that his sentence would have been "1-7 months").

However, Linares's Motion does not satisfy the first prong of the *St. Aubin* requirement because he has not alleged *with specificity* what the investigation would have revealed. Instead, he generally alleges that he did not violate the provisions of 8 U.S.C. § 1326 and should have instead been charged under 18 U.S.C. § 1546. Mot. 3-4. Yet, Linares provided sworn testimony that he understood that he violated all of the elements of 8 U.S.C. § 1326 at the plea hearing in his case. Felony Plea Transcript 11, Feb. 17, 2012, ECF No. 33. Further, the Court informed Linares about the sixteen-level enhancement and he stated that he understood its applicability and effect. *Id.* at 9. Regarding this sworn testimony, the Court notes that "'[s]olemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in

any subsequent collateral proceedings.'" *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (citing *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). Further, it is well settled that a defendant's solemn declarations in open court are presumed to be true, and normally a defendant may not recant sworn testimony at a plea proceeding. *Id.* at 1110. Based on this controlling authority, the Court is unconvinced that it should ignore Linares's prior sworn testimony in open court; instead, the Court finds that Linares was cognizant of, and voluntarily pled guilty to, the charge and the sixteen-level enhancement.

B.  **Failure to Object and Failure to Appeal**

Linares also contests that his attorney "failed to object to the charges, the enhancements, and later challenge the conviction by applying for a direct appeal of the [judgment]." Mot. 7. As to the failure to object, Linares, again, ignores the sheer fact that he provided sworn testimony, that he understood the charge and the enhancement, and that he did not contest them. *See, supra*, Part III.A. And, again, the Court perceives no compelling reason to permit Linares to recant the sworn testimony he provided in open court.

As well, Linares entered into a binding plea agreement, pleading guilty to the charge of illegal re-entry. Because he entered into this agreement, he must overcome the "great weight" accorded court records. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly). Here, the plea agreement establishes that Linares was cognizant that he was subject to a "range of punishment for . . . a term of imprisonment of not more than ten (1) years, a fine not to exceed $250,000, a term of supervised release of at least three (3) years, and a $100 special assessment." Plea Agreement 1. Also, as noted in the previous Section, the Court informed Linares of the sixteen-level enhancement and

7

of the possible range stemming therefrom. Section III.A. After hearing all of Linares's sworn testimony, the Court found that Linares "fully underst[ood] the nature of the charge and the penalties, including the effect of a supervised release term." Report & Recommendation of the Magistrate Judge upon Def.'s Plea of Guilty, Oct. 29, 2010, ECF No. 21. Therefore, the Court accords the plea agreement great weight and concludes that Linares raised no objection to the charge and enhancement.

Linares also argues that his attorney failed to appeal his case. The Supreme Court of the United States has stated that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000) (citing Strickland, 466 U.S. at 690). Additionally, "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 477 (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). "[W]hen counsel fails to file a requested appeal, a defendant is entitled to appeal without showing that his appeal would likely have had merit." *Id.* (quoting *Peguero v. United States*, 526 U.S. 23, 28 (1999)). Further, failure to file a requested notice of appeal constitutes ineffective assistance and entitles the petitioner to an out-of-time appeal. *United States v. Gipson*, 985 F.2d 212, 215 (5th Cir. 1993).

In the instant case, Linares does not allege that he instructed his attorney to file an appeal. Instead, he merely faults his attorney for not filing an appeal. In addition, in his plea agreement, Linares voluntarily relinquished his right to appeal. He "voluntarily and knowingly waive[d] any right to appeal the sentence on any ground." Plea Agreement 3. Without a scintilla of evidence

that he sought to appeal the case within the applicable time limit, the Court must instead accord great weight to the plea agreement that Linares filed in this case and deny relief on this ground.

C. **Seriousness of Guilty Plea and Deportation Consequences**

Linares specifically alleges that his attorney "failed to notify [Linares] of the seriousness of the guilty finding by the Court and how a deport[ation] order would [a]ffect him." Mot. 8. However, Linares fails to account for the lengthy plea hearing at which the Court informed Linares of the seriousness of the guilty plea and the deportation consequences stemming therefrom.

At the plea hearing, the Court spent a significant amount of time informing Linares of all the rights he would forego by entering a plea of guilty. *See* Felony Plea 5-6. The Court then discussed the applicable sentencing guidelines, *id.* at 7-10, and the factual basis substantiating the charges, *id.* at 12-13. When reviewing these matters with Linares, the Court repeatedly asked Linares if he understood each point, to which Linares assented. Further, at the conclusion of the hearing, the Court found that Linares had "consented to plead guilty . . . and . . . understood and waived the rights which ha[d] been explained to [him]; and that [he was] competent to enter a plea; that there [wa]s factual basis to support the plea[]; and that the plea[ was] made voluntarily and with an understanding of the charge and maximum penalty." *Id.* 13. Given the "strong presumption of verity" afforded sworn statements made in Court, *Cervantes*, 132 F.3d at 1110, Linares cannot now recant the same sworn testimony by way of a collateral attack.

As well, during the same plea hearing, the Court informed Linares of the severe immigration consequences of his plea. The Court stated to Linares:

> Also, pleading guilty has very severe immigration consequences. You will be removed from the United States and you can be denied the right to reenter, remain or work in the United States. Should you return to the United States, you can be

prosecuted and jailed. And if you ever applied for United States citizenship, that's going to be denied.

Plea Hearing 10. The Court then asked Linares if he understood those consequences, to which Linares said he did understand. *Id.* Again, the Court will not permit Linares to recant his sworn testimony by way of the instant Motion.

### D. Governmental Discretion

Linares lastly contends that the Government wrongfully charged him with illegal reentry, when it should have instead charged him with false personation, a charge that the prosecution declined to pursue as part of the terms of the plea agreement. Mot. 5. Again, Linares voluntarily entered into a plea agreement, wherein he pled guilty to the crime of illegal reentry. Plea Agreement 1. The Court then determined that Linares entered into that plea agreement "voluntarily and with an understanding of the charge." Plea Hearing 13. Therefore, the Court will accord great weight to Linares's sworn testimony and the agreement he voluntarily tendered to the Court, which is accepted.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Further, appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted. *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding that, in regard to the denial of relief in habeas corpus actions, the scope of appellate review is limited to the issues on which a certificate of appealability is granted). A certificate of appealability is granted or denied on an issue-by-issue basis, thereby limiting appellate review solely to those issues on which a certificate of appealability is granted. *See* 28 U.S.C. § 2253(c)(3) (setting forth the narrow scope of appellate review in habeas corpus matters).

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Here, Linares's Motion fails because he has not made a substantial showing of the denial of a constitutional right. Accordingly, the Court finds that it should deny Linares a certificate of appealability.

## V. EVIDENTIARY HEARING

A motion brought under § 2255 may be denied without a hearing if the motion, files, and records of the case conclusively show that the defendant is not entitled to relief. *See United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam) (holding that there was no abuse of discretion in denying a § 2255 motion without a hearing where the movant's assertions of ineffective assistance were wholly conclusory in nature and refuted by reference to the record itself).

Further, in order to be entitled to an evidentiary hearing on the issue of the voluntariness of a guilty plea based on alleged promises inconsistent with the habeas petitioner's own representations in open court, a petitioner must present the court with "independent indicia of the likely merit of his allegations," *Rupert v. Johnson*, 79 F. Supp. 2d 680, 704 (W.D. Tex. 1999), such as specific factual allegations supported by the affidavit of a reliable third party. *Davis v.*

*Butler*, 825 F.2d 892, 894 (5th Cir. 1987). Although Linares fails to include such an affidavit, the record in this case is adequate to dispose fully and fairly of Linares's claims. The Court need inquire no further on collateral review and an evidentiary hearing is not necessary.

VI. **CONCLUSION**

For the reasons stated, the Court concludes that it should deny Linares's Motion and dismiss his civil cause. The Court further concludes that Linares is not entitled to a certificate of appealability.

Accordingly, **IT IS ORDERED** that Movant Ricardo Linares-Andrade's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 27) is **DENIED** and his civil cause is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Movant Ricardo Linares-Andrade is **DENIED** a Certificate of Appealability.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this matter.

SIGNED this 28 day of **March, 2012.**

_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE